*MICHAEL L. MACKLOWITZ*
*Attorney at Law*

*299 Broadway, Suite 1405, New York, N.Y. 10007*

**TELEPHONE (212) 227-6655**
**FAX NO: (212) 732-6972**

**JEFFREY S. SHUPACK***
**OF COUNSEL**

*Admitted in N.Y. & N.J.*

June 9, 2011

Honorable Sandra L. Townes
United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   *United States v. Alicia Dimichele*
             10 Cr 147 (SLT)

Dear Judge Townes:

      This letter is respectfully submitted to supplement defendant Alicia Dimichele's motion for a severance.

## Argument

**A.   The Charges Against Ms. Dimichele Should Be Severed For Trial From Her Co-defendants To Avoid Substantial Prejudice**

      In addition to the grounds for severance advanced in the defendant's previous submission, Ms. Dimichele's trial should be held separately from the trial of her co-defendant/husband, Edward Garofalo because, for the reasons set forth below, the failure to do so would critically impair her ability to present a defense and thereby deprive her of a fair trial.

      In order to establish that she did not commit the fraud-related offenses charged, Ms. Dimichele will have to show either that: 1) no fraud was committed; or 2) to the extent that the crimes charged in the indictment were committed, they were committed without Ms. Dimichele's knowledge by her co-defendant and husband, Edward Garofalo.

*MICHAEL L. MACKLOWITZ*
*Attorney at Law*

    1.    Severance Is Necessary To Allow A Defendant To Present Exculpatory Evidence

Because joint trials for those indicted together are preferred, "when defendants properly have been joined under Rule 8(a), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). One item specifically enumerated by the Supreme Court as presenting such a risk of prejudice is "if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." *Id.*, citing *Tifford v. Wainwright*, 588 F.2d 954 (5th Cir. 1979).

In *Tifford*, a case the Supreme Court cited in *Zafiro* approving of severance when a joint trial renders unavailable exculpatory evidence that would be available in a severed trial, the Fifth Circuit affirmed a grant of a writ of habeas corpus for denial of Tifford's severance motion. Tifford had contended that his co-defendants would testify on his behalf if the motion were granted. He asserted that they would testify to his lack of knowledge of the scheme to cash the checks as alleged in the indictment and that this testimony was essential to the preparation of his defense. *Id.* at 957. He presented a co-defendant's affidavit to the effect that the co-defendant would testify to Tifford's lack of knowledge of his "nefarious activities" if the severance application were granted. Such testimony concerned matters that were "central to the crimes charged by the indictment, and the co-defendant's testimony was essential to rebut the prosecution's proof on this crucial issue." *Id.* This record conclusively established prejudice, and the failure to sever made the joint trial "fundamentally unfair." *Id.*

A four-factor test for evaluating requests for severance based on the need for exculpatory evidence was announced by the Second Circuit in *United States v. Finkelstein*, 526 F.2d 517 (2d Cir. 1975). In reviewing a trial court's decision on severance, the Second Circuit in *Finkelstein* was satisfied that the trial court could properly have considered: (1) the sufficiency of the showing that the co-defendant would testify at a severed trial and waive his Fifth Amendment privilege; (2) the degree to which the exculpatory testimony would be cumulative; (3) the countervailing

*MICHAEL L. MACKLOWITZ*
*Attorney at Law*

consideration of judicial economy; and (4) the likelihood of strong impeachment of the exculpatory testimony. *Id.* at 524. The *Finkelstein* factors remain guideposts for district court evaluations of applications for severance in this Circuit. See, e.g., *United States v. Morelli*, 2005 WL 743062 (S.D.N.Y) (2005) (applying *Finkelstein* factors and granting severance).

In this case, the *Finkelstein* factors - and fundamental fairness in the administration of justice - strongly support severance.

   2.   In The Absence Of Severance, Ms. Dimichele Will Suffer Severe Prejudice

In a complex case of this nature, it is unrealistic to expect a party to make any decisions concerning testifying in advance of trial (such decisions typically are left until after an analysis can be performed based on the presentation by the government of its case) or to communicate such information to co-parties. But it is nonetheless clear that in this case, the likelihood that Mr. Garofalo will waive his Fifth Amendment privilege against self-incrimination and testify to, and elaborate upon, *all* of the crimes charged against him at a joint trial is remote. As Mr. Garofalo has made clear in his affidavit, at a joint trial he would *not* waive his right to remain silent because of the other charges that are pending against him in which his wife is not also charged. However, as he also made clear in his affidavit submitted to this Court, at a *separate* trial involving only his wife and the limited scope of the charges against her, he would testify that she had *no knowledge* of any wrongdoing that may have been committed. In fact, he would testify that his wife merely followed his instructions about how various employees should be paid and was not aware of any crimes or conspiracy involving himself and others.

Thus, at a separate trial, Ms. Dimichele would be in a position to elicit Mr. Garofalo's unquestionably exculpatory testimony. Should Mr. Garofalo's trial be severed and proceed first, as he emphatically has sought, Ms. Dimichele would be in a far stronger position to call Mr. Garofalo as a witness. On the other hand, without this testimony, Ms. Dimichele's defense will be irrevocably compromised.

As noted, the *Finkelstein* factors strongly counsel in favor of severance here. First, there is a substantial probability that Ms. Dimichele would not be able to avail

**MICHAEL L. MACKLOWITZ**
*Attorney at Law*

herself of Mr. Garofalo's exculpatory testimony on the stand at a joint trial and would be in a far better position to procure his testimony in a severed trial. As a practical matter, once the charges against Mr. Garofalo have been determined, he would be far more likely to take the stand and offer the exculpatory testimony on his wife's behalf, as he has asserted in his affidavit.

Turning to the second *Finkelstein* factor, the exculpatory evidence would not be cumulative. Mr. Garofalo is in a unique position, as the person who operated and managed the trucking business, to provide testimony about the methods he himself utilized to perpetrate the fraud charged in the indictment. Indeed, Mr. Garofalo is the *only* witness in a position to rebut the anticipated testimony of government witness Steven Marcus, who is expected to testify that Ms. Dimichele knew, or should have known, of the criminal venture that was being perpetrated by Marcus and Garofalo. Marcus' testimony would be directly contradicted by Mr. Garofalo's testimony with respect to the knowing participation of his wife in the charged offense. Thus, it is hardly cumulative.

Moreover, certain features of the fraud allegations are not areas where Ms. Dimichele can provide testimony on her own behalf, since she was not personally involved in the details of the trucking operation. Given the limited number of individuals who were part of the alleged conspiracy (i.e. Garofalo and Marcus) and the dearth of witnesses other than Mr. Garofalo who can explain the issues to the jury, it is imperative that Ms. Dimichele not be forced to undergo a joint trial in which she is unlikely to be able to avail herself of such critical and exculpatory testimony. Where a co-defendant is able to offer first-hand information on critical facts and there are not others who could simply be substituted, the second *Finkelstein* factor weighs in favor of severance. See, e.g., *Morelli*, 2005 WL 743062 at 4.

Moreover, countervailing considerations of judicial economy, while significant in cases involving conspiracy allegations, are substantially diminished in light of the critically important evidence to the defense. And while the anticipated length and complexity of a case are certainly significant factors, the risk of critically impairing Ms. Dimichele's defense by preventing her from introducing vital exculpatory testimony in a joint trial is sufficiently clear that considerations of judicial economy are outweighed. In short, considerations of judicial economy should not overwhelm the analysis.

*MICHAEL L. MACKLOWITZ*
*Attorney at Law*

Fourth, with respect to the likelihood of substantial, damaging impeachment, while Ms. Dimichele is not in a position to comment definitively on the government's proof, the basic facts about the offense would not appear to be subject to strong impeachment. Mr. Garofalo has not made contradictory statements that would provide fodder for cross-examination and impeachment. Compare, *United States v. Leonard*, 817 F. Supp. 286, 298 (E.D.N.Y. 1992) (Leonard's anticipated exculpatory testimony "would be subject to damaging impeachment in that such testimony is contradictory to post-arrest statements allegedly made by Leonard").

Finally, what places this case in a category of its own is Ms. Dimichele's lengthy, documented medical history. Ms. Dimichele's father died of a sudden heart attack when she was 15. Following her father's untimely death, her mother began suffering from panic attacks. She would routinely wake her daughter up in the middle of the night with an uncontrollable fear that something terrible was going to happen to her and her family. Before long, Ms. Dimichele began suffering from the same malady. At the age of 15, she was diagnosed with a severe anxiety disorder. For most of her life, she has taken anxiety medicine on a daily basis. She continually suffers from severe panic attacks. Her symptoms include an inability to swallow, chest pains, uncontrollable shaking and related panic attacks. Her waking nightmares include an uncontrollable fear that something is going to happen to her or to her children. As a teenager, her panic attacks grew worse. Fear that she is going to die or that something horrible will happen to her children is a constant in her life. When her anxiety disorder becomes uncontrollable, she is subject to fainting spells.[1]

In addition to her psychological disorders, Ms. Dimichele has suffers from a number of other ailments including juvenile rheumatoid arthritis (since age 5) and was recently diagnosed with Von Willebrand disease.[2] The combination of illnesses from which she suffers makes it highly unlikely that Ms. Dimichele will be able to testify on her own behalf.

---

[1] Access to Ms. Dimichele's medical records and health care providers will be made available upon request.

[2] Von Willebrand disease is a hereditary bleeding disorder caused by a deficiency of Von Willebrand factor. Von Willebrand factor helps blood platelets clump together and stick to the blood vessel wall, which is necessary for normal blood clotting (http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001571/).

***MICHAEL L. MACKLOWITZ***
*Attorney at Law*

Simply put, Ms. Dimichele's principal defense to the charges is that whatever fraud was committed in this case was perpetrated without her knowledge. Mr. Garofalo is in a far better position than Ms. Dimichele to dispute the government's allegations through his testimony.

Accordingly, without a severance, Ms. Dimichele will be severely hamstrung and prejudiced in presenting testimony vital to her defense on central issues in the trial. Not only do the *Finkelstein* factors strongly favor severance, but Ms. Dimichele clearly has carried her burden under *Zafiro* by demonstrating that joinder would severely prejudice her by preventing her from offering crucial testimonial evidence that is not available from any other source and that, if believed, would constitute a complete defense to the central charges in the government's case against her. Under the circumstances, severance is plainly warranted.

The affidavit of Edward Garofalo shall be filed with the Court, with a copy to the Government, under separate cover together with my courtesy copy.

Thank you for your consideration in this matter.

Respectfully submitted,

Michael Macklowitz
Attorney for Alicia Dimichele

cc: Amy Busa