

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

NMA:RJN/AL/MT
F.#2010R00195

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 12, 2011

**By Hand and ECF**

The Honorable Sandra L. Townes
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: United States v. Michael Persico
           Criminal Docket No. 10-0147 (S-2) (SLT)

Dear Judge Townes:

      The government respectfully submits this letter in response to the defendant's September 7, 2011 memorandum in opposition to pretrial detention ("9.7.11 Def. Mem.") and in further support of its application for the pretrial detention of Michael Persico ("M. Persico"). For the reasons set forth in the government's prior submissions, and for the additional reasons set forth below, the government submits that the defendant continues to pose a danger to the community and should be detained.

I.    Evidence of Dangerousness

      A detailed description of the prior detention litigation in this case is set forth in the government's August 18, 2011 renewed application for the detention of M. Persico. To summarize, prior to the return of the superseding indictment ("S-2") in this matter, the government presented evidence demonstrating, inter alia, that M. Persico, an associate of the Colombo organized crime family of La Cosa Nostra (the "Colombo family"): (1) used fear and intimidation to force a furniture store owner to relinquish control of his business to M. Persico's associate when the owner failed to repay a loan; (2) participated in the extortion of the owner of Testa corporation who failed to pay money owed to All Around Trucking ("All Around"), a trucking company secretly controlled by M. Persico; (3) used extortionate means to extend and collect a $100,000 loan to the named principals of All Around and its related company, CJP Development; (4) concealed his involvement in the extortionate

loan to All Around by, among other things, the use of his co-defendant, Anthony Preza ("Preza"), as an intermediary; and (5) determined when it was appropriate for his cousin and co-defendant Theodore Persico, Jr. ("Persico, Jr."), a made member of the Colombo family, and others to use violence to further Colombo family interests.  See Government Memoranda in Support of Pretrial Detention dated March 9, 2010 ("3.9.10 Mem."); March 23, 2010 ("3.23.10 Mem."); November 5, 2010 ("11.5.10 Mem."); and August 18, 2011 ("8.18.11 Mem.").

In its August 18, 2011 submission, the government presented additional evidence demonstrating that the defendant: (1) helped to orchestrate the murder of Joseph Scopo to solidify the Persico family's control over the Colombo family and pave the way for his brother, Alphonse Persico, to become the boss of the Colombo family; (2) funded a loansharking operation knowing that violence would be used to collect from those who did not pay; (3) determined who would be proposed for membership in the Colombo family; and (4) used his position to prevent other made members of the Colombo family from operating businesses that could compete with Persico-controlled entities.  This new evidence, especially when combined with the evidence previously proffered by the government, clearly establishes the danger posed by the defendant.  It proves, among other things, that the defendant exercises significant control over the Colombo family's criminal activities, uses threats of violence, both implicit and explicit, to maintain this control, and sanctions violence when necessary.  Indeed, M. Persico is responsible for directing the conduct of the very people who engage in the violence he claims to reject.

III. M. Persico Controls Violent Members and
     Associates of the Colombo Family

In his September 7, 2011 submission ("9.7.11 Def. Mem."), the defendant argues that (1) he is not violent in comparison to James Bombino ("J. Bombino") and Anthony Russo ("Russo"); (2) he discouraged violence; and (3) notwithstanding that the bulk of the proffered facts stem from pending charges and/or from statements that were captured during consensually recorded conversations, the evidence of the defendant's involvement in organized crime is insufficient.  For the reasons set forth below, the government respectfully submits that the Court should reject these arguments.

First, the defendant argues that he does not promote violence like his co-defendant J. Bombino and former Colombo acting captain Russo.  M. Persico points to comments made by J.

Bombino and Russo which indicate that M. Persico is not a "gangster," and is "legitimate." (9.7.11 Def. Mem. at 6; 9). However, when reviewed in the context of other consensually recorded statements, these comments indicate merely that (1) the defendant is more calculating than others about using violent means to meet his ends and (2) the defendant and his criminal associates attempt to conceal the defendant's involvement in organized crime.

While there may appear to be a distinction between M. Persico's more strategic and discriminating use of threats and violence and the more overtly violent methods used by individuals like J. Bombino and Russo, the difference is a superficial, not a substantive, distinction. Contrary to the defendant's claims, the recordings indicate that the defendant did not reject the use of violence, but rather, deferred it until other methods failed, explaining, "[w]e do it like this today because this way, now, he can't say nothin' later when we do what we gotta do for our money. We gave him the opportunity." (5.10.11 Mem. at 10.) The defendant's more calculating approach, which clearly contemplates future violence, demonstrates the danger he poses. In addition, the defendant's reliance on subtle forms of intimidation creates a heightened risk that he is continuing to conduct the criminal affairs of the enterprise through sophisticated means. See S. Rep. No. 225 98th Cong., 1st Sess., as reprinted in 1984 U.S. Code Cong. & Admin. News 3182 ("Senate Report"), 3195 (noting that defendants pose a danger to the community not only when they commit acts of vioelnce but when it is likely that they will commit even non-violent crimes that are detrimental to the community); see also, United State v. Salerno, 631 F. Supp. 1364, 1371 (S.D.N.Y. 1986), order vacated, 794 F.2d 64 (2d Cir. 1986), order reinstated, 829 F.2d 345 (2d Cir. 1987) (quoting Senate Report at 3189); United States v. Colombo, 777 F.2d 96, 99 (2d Cir. 1985).

Next, the defendant cites to specific statements made by J. Bombino and Russo, which he claims exculpate him. To the contrary, these statements not only reflect the more strategic approach employed by M. Persico in pursuing Colombo family interests, they also highlight the veneer of legitimacy that M. Persico has carefully cultivated in order to avoid detection by law enforcement. Because of the influential role M. Persico plays in the Colombo family, and because his considerable business interests help fund the activities of other members and associates of the Colombo family, criminals like J. Bombino and Russo are well-aware that they are responsible for concealing M. Persico's activities from law enforcement. For example, on June 10, 2009, in a consensually recorded conversation, Persico, Jr.

directed J. Bombino to immediately return funds that M. Persico had provided to All Around, a demolition carting company operated for the benefit of the Colombo family, because "Michael has to get his name out of this." (3.23.2010 Mem. at 13-14.)

Later, in another recorded conversation on September 9, 2009, J. Bombino specifically acknowledged that he protects M. Persico and intentionally avoids references to M. Persico's criminal activities during discussions with others. During that conversation, J. Bombino's brother, Patrick Bombino ("P. Bombino") tried to discuss with J. Bombino the debt J. Bombino owed to the defendant, as a result of a loan made by the defendant through his intermediary, Preza, to All Around and its related company, CJP Development. J. Bombino cautioned his brother that he was not to mention M. Persico's role in making the loan, as follows:

J. BOMBINO: I said, "Well, I mean, I owe this poor guy [referring to Anthony Preza] a hundred thousand as we stand, he's looking to buy the truck, I . . ."

P. BOMBINO: You don't owe him [referring to Preza] nothing. We owe him [referring to M. Persico]. . . .

J. BOMBINO: I don't say "our" on the phone to Michael. 'Cause Michael's not supposed to be part of this business, either. That's why he never lent us the money in the first place (U/I).

Additionally, other evidence, including consensually recorded conversations, bank records and the testimony of Steven Marcus, will establish that M. Persico did, in fact, lend the money to J. Bombino, but J. Bombino understood that he was not to implicate M. Persico in that criminal conduct. Far from exonerating the defendant, the caution J. Bombino and Russo exercised when discussing M. Persico supports the government's argument that M. Persico is a powerful figure in the Colombo family who has the ability to influence the conduct of others.

Finally, the defendant's arguments fail because the very criminals who he concedes resort to violent means to achieve their goals <u>report to the defendant</u>. The government respectfully submits that if the defendant was truly a non-violent criminal, he would not have allowed Russo and J. Bombino to engage in violence. Both J. Bombino and Russo acknowledge the defendant's supervisory role in consensually recorded conversations. For example, during a June 17, 2009 consensual recording, J. Bombino advised that he was instructed to report directly to the

4

defendant regarding the debt owed by All Around.  J. Bombino stated, "I'm going straight to Michael from now on.  I'm gonna report right to Michael.  And, with anything I tell Skinny [a reference to Persico, Jr.], it's gonna go straight to Michael anyway."  See 11.5.10 Mem. at 10-11.

Individuals like Russo, who was described by the defendant as violent and ruthless (9.7.11 Def. Mem. at 8), ultimately take direction from the defendant, not vice versa.  It was the defendant who directed Russo to murder Joseph Scopo before Alphonse Persico was released from prison.[1]  It was the defendant who loaned money to Russo, knowing that Russo would lend it out to others and knowing the means Russo would use to collect from people who failed to pay.  It was the defendant who successfully prohibited Russo from starting a business that might compete with his own business interests, and made Russo understand that ignoring his order was not an option. (8.18.11 Mem. at 6-7, 9, 21-22.)

While the defendant attempts to discredit Russo based on his alleged motive to lie to the government, Russo made incriminating statements about the defendant long before Russo was arrested and began cooperating with the government.  In consensually recorded statements Russo made prior to his cooperation with the government, he emphasized the defendant's authority to make decisions for the Colombo family.  For instance, Russo discussed on several occasions a dispute that arose regarding the amount of gambling proceeds that a Colombo

---

[1]     The defendant argues that the evidence of his involvement in the murder of Joseph Scopo is weak because, in an earlier trial in which Colombo family associate John Pappa was charged with the Scopo murder, the government presented evidence of others' involvement. His argument is without merit. As established at the Pappa trial, and supported by the additional evidence that the government possesses now, the murder of Scopo was orchestrated and executed by several members of the Persico faction during the bloody Colombo family war, a faction of which M. Persico was a member.  Furthermore, at the Pappa trial, the government did not present, nor did it contend to present, evidence of every member of the conspiracy to murder, and the murder, of Scopo, but rather presented evidence establishing Pappa's role as the shooter. Notably, nothing presented in the Pappa trial is contrary to the government's evidence of the defendant's involvement in Scopo murder. Accordingly, the fact that the defendant's name was not mentioned at the Pappa trial has no bearing on the strength of the evidence against him today.

associate was required to pay to Benjamin Castellazzo, the underboss of the Colombo family.  During one consensually recorded conversation on August 12, 2009, Russo acknowledged that, despite being a made member of the Colombo family, he did not have the power to determine how much money the associate owed.  Instead, Russo was consensually recorded discussing how that decision was left to the defendant, his brother Alphonse, who was slated to become boss of the family until his incarceration for life, and his cousin Persico, Jr.  Significantly, during that same consensual recording, Russo explained to the Colombo associate and a cooperating witness that he met with M. Persico to discuss the matter and told him, "I'm gonna listen to your brother [a reference to Alphonse Persico], you, or to Teddy [Persico, Jr.]." Furthermore, during a November 13, 2009 consensual recording, Russo described a meeting with the defendant, during which the defendant warned Russo that "I'm his [Persico, Jr.'s] cousin, so when I tell him to get rid of you, he's gonna get rid of you.'"

      Taken together, the recordings and the defendant's admissions about the violent nature of those who report to him are compelling evidence of the danger the defendant poses to the community.  J. Bombino and Russo are only two of the criminals the defendant had at his disposal, which underscores the need for the defendant to be remanded prior to trial.  As this Court previously found, "violence is a resort that occurs and that everyone knows it but it only occurs when Michael Persico says that it's okay to do it."  (March 29, 2010 Tr. at 11.)

V.    <u>Conclusion</u>

        For the foregoing reasons, the government respectfully requests that a permanent order of detention be entered for the defendant M. Persico.

                                Respectfully submitted,

                                LORETTA E. LYNCH
                                United States Attorney

                     By:       _____/s/_____
                                Rachel J. Nash
                                Allon Lifshitz
                                Michael Tremonte
                                Assistant U.S. Attorney
                                (718) 254-6072/6164/6389

Enclosures

cc:  Sarita Kedia, Esq. (via ECF)
    Paul Shechtman, Esq. (via ECF)