```
NMA:RN/MT/AL
F.#2010R00195
```

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA                10 CR 147 (S-1)(SLT)

    - against -

JAMES BOMBINO, et al.,

        Defendants.

- - - - - - - - - - - - - - - - -X

 

THE GOVERNMENT'S OPPOSITION TO DEFENDANT ALICIA DIMICHELE'S
SECOND SUPPLEMENTAL MOTION TO SEVER

 

```
                                        LORETTA E. LYNCH
                                        United States Attorney
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201
```

```
RACHEL J. NASH
ALLON LIFSHITZ
MICHAEL TREMONTE
Assistant United States Attorneys
     (Of Counsel)
```

I.   INTRODUCTION

On August 17, 2011, a grand jury in the Eastern District of New York returned a superseding indictment ("S-2") in this matter. In Counts Two and Three, Dimichele is charged, along with her husband and co-defendant Edward Garofalo, Jr., ("Garofalo"), with embezzlement of employee benefit funds[1] and conspiracy to embezzle employee benefit funds, in violation of 18 U.S.C § 664.

Although the charges against Dimichele in S-2 are the same as the charges against her in the previous indictments in this case, S-2 includes new and more serious charges, including murder and murder conspiracy, against some of Dimichele's co-defendants, including Garofalo, Jr., Theodore Persico, Jr. ("Persico, Jr."), Michael Persico ("M. Persico"), and a new defendant, Francis Guerra ("Guerra"). However, the government respectfully submits that the rationale behind the Court's May 27, 2011 denial of the severance motions of the defendants Anthony Preza, Louis Romeo, Thomas Petrizzo, Michael Sciaretta and Alicia Dimichele continues to support a joint trial. The Court's denial of these motions was consistent with the well-settled principle that joint trials are favored absent "a serious risk that a joint trial would compromise a specific trial right

---

[1] Dimichele is also charged with aiding and abetting the commission of this crime.

of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." United States v. Bellomo, 263 F. Supp. 2d 561 (E.D.N.Y. 2003) (quoting Zafiro v. United States, 506 U.S. 534, 538-9 (1993).

On June 9, 2011, Dimichele submitted a supplemental motion for severance ("Dimichele Supp. Mot."), in which Dimichele argued that she will suffer prejudice at a joint trial because her husband and co-defendant Garofalo will not waive his Fifth Amendment privilege against self-incrimination and testify on her behalf.[2] On September 11, 2011, Dimichele submitted a supplemental motion arguing that severance is required not only to permit Garofalo to testify on her behalf, but also to avoid the risk of spill over prejudice. ("Def. 9.11.11 Mem.").[3] As set forth below and for the reasons discussed in the government's previous submissions dated May 6, 2011 ("Gov. 5.6.11 Mem."), June 16, 2011 ("Gov. 6.16.11 Mem."), and July 6, 2011 ("Gov. 7.6.11 Ltr."), the government respectfully submits that severance is not warranted here because: (1) the risk of spill over prejudice continues to be low, even with the additional charges against Dimichele's co-defendants in S-2; (2) any testimony that Garofalo

---

[2] On June 27, 2011, Garofalo submitted a letter and supplemental affidavit in further support of Dimichele's motion to sever on this basis.

[3] Garofalo also submitted a supplemental letter in further support of Dimichele's motion to sever on September 13, 2011.

would provide on her behalf at a separate trial would be subject to substantial impeachment; and (3) the interests of judicial economy are served by a joint trial because there is substantial overlap in the evidence that will be presented against Dimichele and co-defendants Edward Garofalo and Theodore Persico, Jr.

## II. ARGUMENT

### A. Factual Background

The embezzlement charges against Dimichele in Counts Two and Three relate to her involvement in D.M. Trucking ("D.M.") and its related companies, including Big R Trucking ("Big R") and others. Specifically, Dimichele and Garofalo are charged with embezzling and conspiring to embezzle contributions that were required to be made, on behalf of union truck drivers who were employed by D.M. and its related companies, including Big R, to welfare benefit plan and pension benefit plan funds operated by the International Brotherhood of Teamsters, Local 282 ("Local 282"). See Gov. 5.6.11 Mem. at 4, 1; Gov. 6.16.11 Mem. at 3, 13-18; Gov. 7.6.11 Ltr. at 3.

Although Dimichele is not charged in the racketeering conspiracy, the same conduct is charged against Garofalo as part of the racketeering conspiracy in Racketeering Act Five. Indeed, the proof at trial regarding this fraudulent scheme will include that the companies were financed and/or controlled, at least in part, by co-defendants Persico, Jr., and M. Persico and that the

4

companies were operated for the benefit of the Colombo organized crime family (the "Colombo family").

    B.    <u>Severance of Dimichele is Not Warranted</u>

Dimichele argues that the prejudice she would suffer in a joint trial outweighs the interest of judicial economy. First, she argues that she will suffer spillover prejudice because (1) her co-defendants, who are charged in the racketeering conspiracy ("RICO defendants") are accused of more serious crimes and (2) the jury would not be able to distinguish between Dimichele's actions and those of Garofalo, her husband and co-defendant. Second, she argues that Garofalo would provide evidence that would exculpate Dimichele if she were tried separately. The government respectfully submits that the Court should reject these arguments.

    1.    <u>Dimichele Will Not Suffer Spillover Prejudice</u>

Generally, where "defendants . . . are jointly indicted [they] should be jointly tried." <u>United States v. Ventura</u>, 724 F.2d 305, 312 (2d Cir. 1983). The preference for joint trials "is particularly strong where, as here, the defendants are alleged to have participated in a common plan or scheme." <u>United States v. Salameh</u>, 152 F.3d 88, 115 (2d Cir. 1998) (per curiam). Indeed, "[t]he principles that guide [a] district court's consideration of a motion for severance usually counsel denial." <u>United States v. Rosa</u>, 11 F.3d 315, 341 (2d Cir. 1993). As this

Court explained in United States v. Souza, No. 06-CR-806 (SLT), 2008 WL 753736, at *1 (E.D.N.Y. Mar. 19, 2008), a defendant moving for severance under Rule 14 bears a heavy burden: "severance [is] inappropriate unless a joint trial would compromise a trial right of the moving defendant or prevent the jury from making a reliable judgment about guilt or innocence." 2008 WL 753736, at *8 (citing United States v. Aulicino, 44 F.3d 1102, 1116 (2d Cir. 1995)); see also Zafiro v. United States, 506 U.S. 534, 539 (1993) (holding that prejudice under Rule 14 exists only where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence"). That risk is minimal in this case because, as set forth below, the proof against Dimichele is substantial and straightforward, and the jury will be able to easily distinguish the proof of her criminal activities from the proof offered against her co-defendants.

First, Dimichele argues that the number of recordings related to the charges against her as compared to the number of recordings related to her co-defendants is prejudicial. Def. 9.11.11 Mem. at 4. However, the evidence that the government would introduce at trial relating to the charges against Dimichele is straightforward. It will include wiretap interceptions and consensual recordings in which she discusses

among other topics, payroll, union audits and her effort to conceal the actual number of hours worked from the union; documentary evidence demonstrating that the total number of hours worked by the employees were not reported to the union; and testimony from cooperating witnesses, which is expected to demonstrate that Dimichele was substantively involved in running the trucking companies. Similarly, the evidence against Dimichele's co-defendants consists of distinct categories of materials, including audio recordings of their admissions, documentary evidence and testimony of cooperating witnesses regarding their criminal activities. The likelihood of spillover prejudice is reduced when, as here, the evidence against each defendant is "straightforward" and unlikely to confuse the jury. See, e.g., United States v. Hernandez, 85 F.3d 1023, 1029-1030 (2d Cir. 1996). Moreover, the Second Circuit has repeatedly rejected the argument that a defendant is prejudiced by being tried with co-defendants against whom the proof was allegedly stronger. See, e.g., United States v. Locascio, 6 F.3d 924, 947 (2d Cir. 1993); United States v. Scarpa, 13 F.2d 993, 1014-1015 (2d Cir. 1990); Cervone, 907 F.2d at 341-42.

Second, Dimichele argues she will suffer prejudice because her co-defendants are charged with violent crimes. While it is true that the RICO defendants are charged with additional violent crimes with which Dimichele is not, "differing levels of

7

culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials." Scarpa, 913 F.2d at 1015 (quotation marks omitted); United States v. Devillo, 983 F.2d 1185, 1192-93 (2d Cir. 1993) (holding that denial of severance motion was not abuse of discretion even though other defendants were charged with attempted murder). Nor does a defendant's relatively minor role require severance. See United States v. Chang An-Lo, 851 F.2d 547, 557 (2d Cir. 1988). Moreover, a limiting instruction, which juries are presumed to follow, about what evidence the jury may consider should cure any risk of prejudice. See, e.g., United States v. Jovner, 201 F.3d 61, 75 (2d Cir. 2000); United States v. Villegas, 899 F.2d 1324, 1347-48 (2d Cir. 1990); United States v. Teitler, 802 F.2d 606, 617 (2d Cir. 1986).

Furthermore, the fact that the RICO co-defendants are charged with violent crimes cuts both ways. While Dimichele argues that the evidence relating to these crimes will result in spill-over prejudice, the opposite is likely to be true. Indeed, it is possible that, at a joint trial, the proof against Dimichele will appear to be less and her role may appear to be less significant. See Richardson, 481 U.S. at 210 ("Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative

culpability – advantages which sometimes operate to the defendant's benefit.").

Third, Dimichele further claims that her risk of spillover prejudice is stronger than that of an ordinary defendant in her position because of her marriage to Garofalo. Yet, for the same reasons described above, this relationship could work in her favor as a joint trial would highlight for the jury the distinctions between her crimes and his. Furthermore, as noted above, evidence of Garofalo's involvement in the racketeering enterprise will be relevant even in a severed trial because the fraudulent scheme in which Dimichele is charged is a piece of the racketeering conspiracy. For example, it is impossible to describe for the jury the genesis of the scheme without providing evidence regarding the formation of the company for the benefit of the Colombo family. United States v. Moten, 564 F.2d 620, 631 (2d Cir. 1977)(rejecting the argument that because the defendants were tied by the "'marital knot' the jury would infer that they were joined together by the 'criminal knot' and holding that this argument is not grounds for severance); United States v. Losada, 674 F.2d 167, 171-172 (2d Cir. 1982) (holding that joint trial of husband and wife was proper and rejecting the husband's argument that he was prejudiced by the evidence against his wife).

9

Finally, any risk of prejudice from proof of her husband's criminal activities is equally present at a severed trial in which Garofalo's testimony is offered on Dimichele's behalf. If Garofalo testifies for his wife, the government will be able to impeach him using, among other things, his own involvement in organized crime.

### 2. Garofalo's Apparent Willingness to Testify at a Separate Trial Does Not Warrant Severance

The government respectfully refers the Court to its June 16, 2011 and July 6, 2011 submissions addressing this issue in depth. To summarize, even assuming, as Dimichele and Garofalo contend, that Garofalo is in a unique position to provide allegedly exculpatory testimony, this factor is heavily outweighed by (1) the fact that the testimony would be subject to substantial impeachment and (2) the interests of judicial economy. United States v. Finkelstein, 526 F.2d 517, 523-24 (2d Cir. 1975).

Dimichele and Garofalo continue to assert that Garofalo's testimony would exculpate Dimichele, without addressing the myriad ways in which his supposedly exculpatory testimony will be impeached. As set forth in more detail in the government's prior submissions, Dimichele and Garofalo fail entirely to address Garofalo's obvious bias, as well as the other evidence, including documentary evidence, recorded conversations

10

and testimony by a cooperating witness, that would substantially undermine the credibility of Garofalo's testimony.[4]

Dimichele now asserts that the impeachment of Garofalo's testimony would not be any greater than the impeachment of testimony provided by Steven Marcus, a cooperating witness who was involved in the creation of the company and the fraudulent scheme. Yet, Marcus's testimony is corroborated by documents, wiretap interceptions and consensual recordings. In contrast, Dimichele has not proffered any evidence to support Garofalo's claim that Dimichele was unaware of the fraudulent scheme. In light of the substantial impeachment to which Garofalo's testimony would be subjected, the potential value, if any, that his testimony would add to Dimichele's defense is substantially outweighed by the interests of judicial economy.

---

[4] In its prior submissions, the Government proffered specific evidence it would use to impeach Garofalo's testimony, including: testimony from a cooperating witness who is expected to testify that Dimichele was substantively involved in the business with Garofalo and Persico, Jr.; documents demonstrating that Dimichele under-reported the number of hours employees worked; and recorded conversations which further demonstrate Dimichele's involvement in the scheme, such as her recorded statement indicating that she tries not to keep a record of the hours not reported to the union. Gov. 6.16.11 Mem. at 14-18; Gov. 7.6.11 Mem at 3.

### 3. A Joint Trial Serves the Interests of Judicial Economy

Even assuming that a particular defendant is somehow prejudiced by joinder, the issue under Rule 14 is whether that prejudice "is sufficiently severe to outweigh the judicial economy that would be realized by avoiding lengthy multiple trials." United States v. Lanza, 790 F.2d 1015, 1019 (2d Cir. 1986) (citing United States v. Panza, 750 F.2d 1141, 1149 (2d Cir. 1984)). In this case, as set forth above, the evidence in support of the government's charges against Dimichele is the same as the evidence the government would introduce to prove Racketeering Act Five against Garofalo, including the enterprise evidence that would establish the trucking companies' connection to the Colombo family. At separate trials, the government would be required to introduce nearly identical testimony from the same witnesses, the same wiretap and consensually recorded conversations and the same documents.

Under these circumstances, severance would be unduly burdensome and would needlessly disadvantage the public, the Court, and the government with complex and repetitive trials. United States v. Lyles, 593 F.2d 182, 191 (2d Cir. 1979) (holding that the presumption in favor of joint trials "conserves judicial resources, alleviates the burden on citizens serving as jurors, and avoids the necessity of having witnesses reiterate testimony

in a series of trials." (quoting United States v. Borelli, 435 F.2d 500, 502 (2d Cir. 1970)); see also Richardson v. Marsh, 481 U.S. 200, 209-10 (1987). Thus, any minimal potential prejudice that would be suffered by Dimichele as a result of a joint trial is far outweighed by the prejudice that would be suffered by the government in this case if the trial of Dimichele were severed from that of her co-defendant Garofalo. See United States v. Ashley, 905 F. Supp. 1146, 1166 (E.D.N.Y. 1995) (where defendant requested severance so that co-defendant could testify at the severed trial, the request was denied in part because it would require substantial duplication of proof); United States v. Schlegel, No. 06-CR-0550 (JS), 2009 WL 3837305, at * 2 (E.D.N.Y. Nov. 16, 2009) (reasoning that severance was inappropriate where it would require the government to call the same witnesses, present the same testimony and essentially preview its evidence).

III. CONCLUSION

For the reasons set forth above, the risk of spillover prejudice is low, the benefit of Garofalo's testimony is minimal at best, and the overlap in proof is substantial. Therefore, in light of these factors and in the interests of judicial economy,

the government respectfully submits that Dimichele's motion for severance should be denied.  Notwithstanding the reasons set forth above, should the Court determine that severance is proper under the circumstances, the government requests leave to be heard, either at oral argument or by letter, on how best to proceed to avoid multiple, repetitive trials.

>                             Respectfully submitted,
>
>                             LORETTA E. LYNCH
>                             United States Attorney
>                             Eastern District of New York

Rachel Nash
Allon Lifshitz
Michael Tremonte
Assistant U.S. Attorneys
     (Of Counsel)